UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
ALONSO L. MYERS,

               Plaintiff,

    -against-

NYS DIVISION FOR HUMAN RIGHTS,

               Defendant.
------------------------------------------------------x

**MEMORANDUM & ORDER**
Case No. 05-CV-2582 (FB) (LB)

*Appearances:*

*For the Plaintiff:*
ALONSO L. MYERS, *PRO SE*
P.O. Box 475
Williamsburgh Station
Brooklyn, NY 11211

*For Defendant:*
MBIABAH L GHARTEY, ESQ.
NY State Office of the Attorney General
120 Broadway
24th Floor
New York, NY 10271

**BLOCK, Senior District Judge:**

    *Pro se* plaintiff Alonso L. Myers ("Myers") alleges that defendant NYS Division for Human Rights's ("State Division") violated Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act of 1967 ("ADEA") by failing to hire him on account of his race, gender and age, and in retaliation for a charge he filed against his employer, the New York City Commission on Human Rights ("City Commission"). Before the Court is defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56; for reasons stated below, the motion is granted.

I

The following facts are undisputed and taken from defendant's Rule 56.1 statement as well as the statement of facts contained in plaintiff's memorandum of law:[1]

During the entire relevant period, Myers, a man of Native-American and African-American descent, has been employed by the City Commission as a Human Rights Specialist.

In 1999, Myers took Civil Service Exam No. 23-444 ("Exam No. 23-444") for the position of Human Rights Specialist 1 with the State Division; the exam consisted of a written portion and an oral portion. Myers took and passed the written portion on February 27, 1999, receiving a score of 70, the minimum required to pass; he subsequently took and passed the oral portion, which was graded on a pass/fail basis. Myers was tied for last along with fourteen others on the eligible list (the "23-444 List"), which consisted of 73 candidates who passed the exam; the highest-ranking candidates achieved a score of 95.

To determine candidates' interest in available positions, the State Division sent two canvass letters on November 19, 2003, to all candidates who passed the exam, including Myers. One letter informed candidates of an open position in New York City, while the other letter concerned an open position in Peekskill, New York. Both letters

---

[1] Attached to the defendant's notice of motion was a Local Rule 56.2 statement explaining the summary judgment standard and the consequences of a grant of summary judgment; while Myers did not present his own Rule 56.1 statement, the statement of facts contained in his memorandum of law were "culled from the record . . ., affidavits, depositions, admission and/or answers to interrogatories." Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. at 4.

2

stated that "[i]f you do not return this canvass letter your name will not be considered for any future vacancies in this location in this agency." Aff. of Ali Jafri, Ex. 2. Myers returned the canvass letter concerning the New York City opening, checking a box on the letter stating "YES, I am interested. I can report to work by _____;" Myers wrote "12/19/03" in the blank. *Id.* Myers did not return the canvass letter concerning the Peekskill opening; at his deposition, Myers stated that he did not have "any interest in working in Peekskill ... or in any other place other than New York City." Myers Depo. at 40:23-25.

Based on the pool of returned canvass letters, the State Division interviewed candidates and commenced the selection process for both locations in accordance with the "one-in three" rule, which requires that appointment from an eligible list be made by the selection of one of the three persons with the highest standing on the eligible list who are willing to accept the appointment. *See* N.Y. Civ. Serv. § 61(1). Myers was never interviewed for either location because (1) he did not return the Peekskill canvass letter, and (2) the State Division did not need to reach Myers' position on the list to fill its open New York City positions: The State Division appointed twelve individuals from the 23-444 List to the New York City positions; of this group, the lowest-ranked candidate appointed received a score of 85 on Exam No. 23-444 and was ranked 28th on the list. Additionally, nine were men and seven were over the age of 40. According to defendant, it does not maintain information concerning the racial identity of individuals on eligible lists.

In his opposition to summary judgment, Myers argues that the State Division did hire someone from the 23-444 List with the same rank as Myers. While the State Division does not dispute this, the undisputed facts reveal that this candidate was hired

3

for the Peekskill position.

In June of 2004, Myers learned that his co-worker, Janne P. Linares ("Linares"), a Hispanic-American, was hired by the State Division for a Human Rights Specialist I position in the Bronx. Based on Linares' hiring, Myers surmised that he had been passed over for a younger, less-qualified female Hispanic; however, Myers learned during discovery, and the parties do not dispute, that Linares was hired based on Civil Service Exam No. 24-291, which Myers did not take and would not have qualified to take because the exam was for the position Human Rights Specialist I (Spanish Language) and Myers did not have the requisite Spanish language skills to qualify for the position. Thus, Myers now concedes that the hiring of Linares "was in fact a legitimate business decision," Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. at 10; he nonetheless believes the State Division did not hire him on account of his race, gender and age.

Myers also believes that he was not hired because of a charge of discrimination he filed in 2003 with the Equal Employment Opportunity Commission ("EEOC") against his employer, the City Commission, which forms the basis for his retaliation claim.

II

"Summary judgment is appropriate where there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law, *i.e.*, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004).

4

In support of its summary judgment motion, defendant argues that (1) Myers' ADEA claim is barred by the Eleventh Amendment, (2) Myers' Title VII race and gender claims fail because there is conclusive evidence of a nondiscriminatory reason for not hiring him, and (3) Myers' Title VII retaliation claim fails because the State Division was not named in Myers' 2003 EEOC charge.

## A. ADEA Claims

The Eleventh Amendment grants states immunity from being sued by private parties in federal court absent abrogation by Congress or the state's consent, *see McGinty v. New York*, 251 F.3d 84, 91 (2d Cir. 2001); neither exception applies here. In *Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000), the Supreme Court held that the ADEA did not validly abrogate states' sovereign immunity, *see* 528 U.S. at 91, and the State of New York, of which defendant is a part, has not consented to be sued under the ADEA. *See McGinty*, 251 F.3d at 95 (holding that New York had not "made a 'clear declaration' that [it] intended to submit to federal court jurisdiction" under the ADEA). Thus, plaintiff's ADEA claim is barred by sovereign immunity.

## B. Title VII Race and Sex Claims

Myers' discrimination claims are analyzed under the familiar burden-shifting scheme established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973): To establish a prima facie case, Myers must show "(i) that he belongs to a [protected class]; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of

complainant's qualifications." *McDonnell Douglas Corp.*, 411 U.S. at 801-802 (1973). Once a prima facie case is established, the burden shifts to defendant "to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected . . . for a legitimate, nondiscriminatory reason." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). "If a defendant carries this burden of production . . . [the plaintiff] must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision." *Id.* at 255-56. Ultimately, the plaintiff must "persuade the court that [the plaintiff was] the victim of intentional discrimination," *id.* at 256, and proof that the defendant's explanation was pretextual by itself does not carry the burden. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) ("Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.")

Defendant concedes the first three prongs of plaintiff's prima facie case – that Myers belonged to protected classes, that he applied for and was qualified for the position in New York City, and that he was not hired, *see* Mem. of Law in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem.") at 12; however, Myers has not established the fourth requirement – that the position remained open and the employer continued to seek applicants from persons of his qualifications – because it is undisputed that his "rejection" was the result of the State Division filling its openings with candidates ranked higher than him on the 23-444 List. Since the position Myers sought did not remain open and the State Division did

6

not continue to seek candidates from the 23-444 List, Myers has failed to establish a prima facie case of race or sex discrimination.

Even if Myers were successful in establishing a prima facie case, the State Division would still be entitled to summary judgment because no rational factfinder could conclude that the State Division's failure to hire him was discriminatory.

The State Division has offered evidence that it had legitimate non-discriminatory reasons for not hiring Myers – that it filled open positions without needing to reach him on the 23-444 List; therefore, Myers had to proffer evidence to create a material dispute of fact as to whether the State Division's reason was a pretext for discrimination. *See Burdine*, 250 U.S. at 256. While "direct evidence of an employer's discriminatory intent will rarely be found . . . a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment," *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997); Myers has failed to do so.

Myers makes two pretext arguments, both of which are baseless. He first argues that defendants' failure to maintain racial information concerning candidates "is nothing more than a deliberate attempt to cover up the discriminatory actions." Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. at 12. In light of Myers' weak prima facie case, however, this argument does not rebut the State Division's proffered explanation; nor does it demonstrate that he was not hired because of discriminatory animus.

Myers also argues that defendant's reason for not hiring him is pretextual because another person from the 23-444 List with the same rank as Myers was hired; however, this argument is a red herring because that candidate was hired for the Peekskill

7

position; Myers took himself out of consideration for that position by not returning his canvass letter.

Simply stated, Myers has not offered any evidence, direct or circumstantial, to create a triable issue as to whether the State Division's justification for not hiring him was a pretext for discrimination. In any event, even if the Court were to view the evidence as presenting a factual issue on pretext, the evidentiary strength of the State Division's justification and its record of hiring numerous men would preclude Myers from defeating summary judgment on his sex discrimination claim. *See Reeves*, 530 U.S. at 148 ("[A]lthough the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory . . . if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.").

## C. Title VII Retaliation

In order to establish a prima facie case of retaliation, "[a] plaintiff must demonstrate participation in protected activity known to the defendant, an employment action disadvantaging the person engaged in the protected activity, and a causal connection between the protected activity and the adverse employment action" to establish a prima facie case of retaliation. *Cruz*, 202 F.3d at 566.

It is undisputed that Myers' 2003 EEOC charge filed against his employer, the City Commission, constituted protected activity; however, Myers has not presented any

evidence that this activity was known to the State Division. Furthermore, even if the State Division knew of Myers' charge against his the City Commission, Myers fails to present any evidence which suggests a causal connection between the charge and the State Division's failure to hire him.

Even assuming *arguendo* that Myers were successful in establishing a prima facie case of retaliation, he has not created a triable issue of fact as to whether the State Division's proffered reason for not hiring him was a retaliatory pretext for the reasons explained above. *See Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001) ("If . . . the defendant . . . points to evidence of a legitimate, nonretaliatory reason for the challenged employment decision, the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation.").

## CONCLUSION

Defendant's motion for summary judgment is granted; the complaint is dismissed.

**SO ORDERED.**

s/ Judge Frederic Block

FREDERIC BLOCK
Senior United States District Judge

Dated: Brooklyn, New York
May 16, 2008